ANDERSEN LAW FIRM, LTD.
RYAN A. ANDERSEN
Nevada Bar No. 12321
E-mail: ryan@vegaslawfirm.legal
101 Convention Center Drive, Suite 600
Las Vegas, Nevada 89109
Telephone: (702) 522-1992
Facsimile: (702) 825-2824

WIGGAM & GEER, LLC
WILL B. GEER
Georgia Bar No. 940493
*(Pro Hac Vice Application Pending)*
E-mail: wgeer@wiggamgeer.com
50 Hurt Plaza, SE, Suite 1245
Atlanta, Georgia 30303
Telephone: (678) 587-8740
Facsimile: (404) 287-2767

*[Proposed] Attorneys for Edward Burdekin and National Store Retail Services, LLC*

**Electronically Filed: August 29, 2019**

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>NATIONAL MERCHANDISING SERVICES, LLC<br><br>☐ Affects this Debtor.<br><br>☐ Affects all Debtors.<br><br>☒ Affects Edward S. Burdekin.<br><br>☒ Affects National Store Retail Services, LLC | Case No.: BK-S-19-15172-ABL<br>Chapter 11<br><br>Jointly administered with:<br><br>Edward S. Burdekin, Case No. BK-S-15174-ABL; and<br><br>National Store Retail Services, LLC,<br>    Case No. BK-S-15175-MKN<br><br>**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF WIGGAM & GEER, LLC AS ATTORNEYS FOR THE DEBTOR-IN-POSSESSION, NUNC PRO TUNC AS OF THE PETITION DATE**<br><br>Date:   October 15, 2019<br>Time:   9:30 a.m.<br>Place:  300 Las Vegas Blvd.<br>        Las Vegas, NV<br>        Courtroom 1 |

Edward Steven Burdekin, ("Burdekin"), debtor and debtor-in-possession, and National Store Retail Services, LLC, a Georgia limited liability company, ("NSRS", and, together with Burdekin, the "Debtors"), by and through their proposed counsel, Wiggam & Geer, LLC. ("Geer Law Firm"),

hereby request entry of an order pursuant to Sections 327(a), 328, 329, and 331, and FRBP 2014 and 2016 authorizing the employment and retention of Geer Law Firm nunc pro tunc as of the Petition Date as its general reorganization counsel.[1]

This Application is supported by: the following Memorandum of Points and Authorities; the Declaration of Will B. Geer, Esq. ("Geer Declaration"), filed contemporaneously herewith; all papers and pleadings filed in the above-captioned case, judicial notice of which is requested pursuant to Rule 201 of the Federal Rules of Evidence; and any arguments of counsel offered in support of the Motion during any hearing held on the Application.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Jurisdiction

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in the District of Nevada is proper pursuant to 28 U.S.C. § 1409.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). If it is determined that the Court cannot enter final orders or judgment in this core proceeding consistent with Article III of the United States Constitution, the Debtors consent to the entry of final orders or judgment by this Court.

The relief requested herein is premised on Sections 327(a), 328, 329, and 331, and 1107(a) of FRBP 2014 and 2016.

### II. Background

1.     On August 10, 2019, NSRS filed a voluntary petition (the "NSRS Chapter 11 Case"). Burdekin commenced his case on August 10, 2019 (the "Burdekin Chapter 11 Case", and, together the "Chapter 11 Cases"). The Chapter 11 Cases are jointly administered with National Merchandising Services, LLC ("NMS"), a Nevada limited liability company (the "Lead Chapter 11 Case"). The Chapter 11 Cases have been consolidated for procedural purposes under the Lead Chapter 11 Case.

---

[1] When used herein, all references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket in the above-captioned case. All references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All References to "FRBP" are to the Federal Rules of Bankruptcy Procedure. All references to "LR" are to the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada.

**National Merchandising Services, LLC**

2. NMS executes business to business services to its clients primarily through merchandising, auditing, project assembly and other in-store or in-home work, which is provided by independent contractors provided by NSRS. NMS administers these services through local, regional, district and other personnel. NMS employs ten people. Besides Burdekin, NMS employs three coordinators, one daytime manager, one nighttime manager, a secretary, and three schedulers.

3. NMS is owned by National Merchandising of America, Inc., a Georgia corporation (49%) and Spar NMS Holdings, Inc., a Nevada corporation.

4. NMS has two primarily clients, Advance Auto (representing about 17% of NMS business), and Dollar General (representing about 80% of NMS business).

5. Burdekin has been the President and Chief Executive Office of NMS since about the time it began engaging in this business in 2012, and has operated NMS since that time.

**National Store Retail Services, LLC**

6. NMS contracts field work to NSRS who in turn currently provides over 100 field workers to NMS customers.

7. Burdekin owns 100% of NSRS. Burdekin is also the sole manager, president and CEO of NSRS, and Burdekin has operated NSRS since its inception

8. The Debtors' businesses are interdependent, both financially and operationally. Burdekin is employed by and operates NMS. NMS's operations are dependent upon NSRS providing field service workers to NMS customers. NSRS's revenue is dependent on NMS business operations. Burdekin's income is derived from operating both NMS and NSRS. Threats against Debtors are intertwined and claims, if any, will be made against Debtors and will need to be resolved in a collective process together.

The Debtors, through their Chapter 11 Cases, are seeking to reorganize debt associated with its multiple businesses. The Debtors have filed the Chapter 11 Cases and sought bankruptcy protection so they can attempt to reorganize all claims against them in a fair and transparent manner, while maintaining its ongoing business operations.

### III. Relief Requested

By this Application, the Debtors request entry of an order authorizing it to employ and retain Geer Law Firm, nunc pro tunc as of the petition date, to represent the Debtors as their bankruptcy counsel in connection with the prosecution of the Chapter 11 Cases according to the terms and conditions contained within that certain engagement agreements dated August 9, 2019 (the "Engagement Agreements"). The copies of the Engagement Agreements are attached to the Geer Declaration as **Exhibit 1**.

Prior to commencement of the Chapter 11 Cases, on or about July 22, 2019, the Debtors sought from Geer Law Firm advice regarding its deteriorating financial situation, threatening litigation, options in addressing its liabilities, and the possibility of reorganization through bankruptcy. Thereafter, the Debtors decided to retain Geer Law Firm as their bankruptcy reorganization counsel. Indeed, the Debtors assert representation of it by Geer Law Firm is of critical importance to Debtors' efforts to address their debts through bankruptcy, as Geer Law Firm has the legal expertise necessary to represent the Debtors for purposes of the Chapter 11 Cases.

Debtors selected Geer Law Firm because of the firm's experience with and knowledge of bankruptcy matters, including representation of debtors, creditors, and bankruptcy trustees in a wide variety of bankruptcy cases, as well as Geer Law Firm's knowledge of the Debtors' businesses. Because the Chapter 11 Cases require a significant amount of attention in the very-near term, the Debtors believe Geer Law Firm's proposed representation of Debtors is critical to it achieving a successful outcome in the Chapter 11 Cases. For this same reason, the Debtors wish to employ Geer Law Firm as their general reorganization counsel.

### IV. Scope of Proposed Representation

Legal services provided by Geer Law Firm as general reorganization counsel are necessary to allow the Debtors to faithfully perform their duty as a debtors-in-possession and to allow Debtors to successfully reorganize and negotiate with creditors. Subject to further order of the Court, Geer Law Firm will provide, among others, the following legal services:

a) advise the Debtors with respect to its powers and duties as a debtors and debtors-in-possession in the continued management and operation of its business and property;

b) attend meetings and negotiate with representatives of creditors and other parties in interest and advise and consult on the conduct of the Chapter 11 cases, including the legal and administrative requirements of operating in Chapter 11;

c) take all necessary action to protect and preserve the bankruptcy estate, including the prosecution of actions on its behalf, the defense of any actions commenced against the bankruptcy estate, negotiations concerning all litigation in which the Debtors may be involved, and objections to claims filed against the bankruptcy estate;

d) prepare on behalf of the Debtors all motions, applications, answers, orders, reports, and papers necessary to the administration of the estate;

e) negotiate and prepare on the Debtors' behalf plan(s) of reorganization, disclosure statement(s), and all related agreements and/or documents and take any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

f) advise the Debtors in connection with any sale of assets;

g) appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the bankruptcy estate before such courts and the U.S. Trustee; and

h) perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with their Chapter 11 cases.

The above-described services are essential to the Debtors' successful reorganization, and, as such, it is necessary the Debtors employ general reorganization counsel to provide such legal services. Geer Law Firm is willing and able to act on behalf of and provide such services to Debtors.

## V. Disinterestedness of Professionals

Prior to commencing its representation of the Debtors, the Debtors disclosed to Geer Law Firm its managers, members, officers, directors, shareholders, and creditors to determine any prior or present representation of any creditors or parties-in-interest. From such initial review, and continuing through the preparation of this Application, Geer Law Firm has continued to review the information provided by the Debtors to determine any prior or present representation of any creditors or parties-in-interest.

Geer Law Firm will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and Geer Law Firm will supplement its disclosure to the Court should any new relevant facts or relationships be discovered.

To the best of Debtors' knowledge, and except as otherwise provided in the Geer Declaration, Geer Law Firm and its attorneys: (i) do not have any connection with Debtors, its affiliates, creditors, the United States Trustee or any person employed in the Office of the United States Trustee, or any other party in interest or their respective attorneys and accounts, except as otherwise provided in the Geer Declaration; (ii) are "disinterested persons" as such term is defined in Section 101(14); and (iii) do not hold or represent any interest adverse to Debtors or Debtors' bankruptcy estate.

Specifically, and except as otherwise set forth in the Geer Declaration, if at all:

a) neither Geer Law Firm nor any attorney at the firm holds or represents an interest adverse to Debtors' bankruptcy estate;

b) Neither Geer Law Firm nor any attorney at the firm is or was a creditor, an equity holder or an insider of Debtors;

c) Neither Geer Law Firm nor any attorney at the firm is or was, within two years before the Petition Date, a director, officer or employee of Debtors;

d) Geer Law Firm does not have an interest materially adverse to the interest of the bankruptcy estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in Debtors; and

e) No attorney at Geer Law firm is related to any United States District Judge or United States Bankruptcy Judge for the District of Nevada or to the United States Trustee for such district or to any known employee in the office thereof.

Therefore, Geer Law Firm is a "disinterested person" as such term is defined by Section 101(14), and its representation of the Debtors will not be adverse to the Debtors' estate.

### VI. Professional Compensation

The Firm was paid a retainer of $20,000 by Edward Burdekin for his individual bankruptcy case (the "Burdekin Retainer") and $7,500 by NSRS for its bankruptcy case (the "NSRS Retainer").

$16,720 of the Burdekin retainer remains in the Geer Law Firm's trust account, and $5,140.00 of the NSRS retainer remains in the Geer Law Firm's trust account.

Through this Application, Geer Law Firm proposes to continue to hold such retainer, and to apply it to fees and expenses incurred by Geer Law Firm in this bankruptcy case, following Court approval of the same. Pursuant to the Engagement Agreements, Geer Law Firm will provide Debtors with regular, monthly statements detailing legal services rendered and costs and expenses disbursed on Debtors' behalf, with both interim and final payment of such invoices subject to Court approval, as set forth in the Engagement Agreements.

Geer Law Firm's fees are based on the hourly rates of the professionals working on the matter, which hourly rates are subject to annual adjustment, as well as the value of the firm's services to Debtor. As of the filing of this Application, the firm's prevailing hourly rates are as follows: for Will B. Geer, Esq., $400; for Ceci Christy, Esq., $350; and for paralegals $130.  Such rates are subject to an annual adjustment, per the Engagement Agreements. Geer Law Firm's prevailing hourly rates are designed to fairly and adequately compensate Geer Law Firm for the work performed and to cover fixed and routine overhead expenses incurred in the operation of the firm.

As Geer Law Firm does with other Clients, the firm will, in its discretion, charge Debtors for all other costs and expenses, including, without limitation, printing and duplication (at the rate of $0.05 per black and white impression and $0.15 per color impression), travel, business meals (but never overtime meals), postage, delivery and courier services, computerized legal research, court fees, witness fees, and other fees related to trials and hearings. As near as possible, Debtors will be charged Geer Law Firm's actual cost for all cost and expense items incurred by the firm.

Geer Law Firm has agreed to accept as compensation such sums as may be allowed by the Court on the basis of the time spent, the rates charged for such services, the necessity of such services to the administration of the bankruptcy estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues, or tasks addressed in the Chapter 11 Cases.

In accordance with the terms of the Engagement Agreements, Debtors seek approval of the fee structure described herein pursuant to Section 328, which provides that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, the fee structure set forth in the Engagement Agreements, and for which approval is sought herein, is permissible under Section 328(a). This fee structure is reasonable based on the customary compensation charged by comparably-skilled practitioners in cases outside of bankruptcy, as well as in similar cases under Chapter 11 of the Bankruptcy Code, and has been approved and implemented in other Chapter 11 cases.

Other than as set forth herein, no arrangement is proposed between Geer Law Firm and Debtors for compensation and reimbursement to be paid in the Chapter 11 Cases. Further, Geer Law Firm has no agreement with any other person or entity to share any compensation or reimbursement received, nor will Geer Law Firm agree to do so, except as may be hereafter permitted pursuant to Section 504(b)(1).

## VII. Fee Applications

Geer Law Firm will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in the Chapter 11 Cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and all orders of this Court. Geer Law Firm will seek compensation for the services of each attorney or paraprofessional acting on Debtors' behalf at the then-current prevailing hourly rate charged for such services on a non-bankruptcy matter, as such rates are described and/or modified by the Engagement Agreements.

Geer Law Firm will file interim requests for compensation and reimbursement as often as every 120 days, pursuant to Section 331.

## IX. No Prior Request

Geer Law Firm has not previously requested the relief sought herein before this or any other court.

### X. Need for Relief Nunc Pro Tunc

The Debtors request approval of Geer Law Firm's employment nunc pro tunc to as of the commencement of the Chapter 11 Cases, as the firm will be required to perform legal services for the Debtors during the interim before the hearing date on this Application. Indeed, between the time of the filing of this Application and the hearing on the same, the Debtors, through counsel, prepared for and participated in Section 341 Meetings of Creditors, first day motions, and other substantive case administration issues. As a result, cause is present for relief nunc pro tunc.

### XI. Conclusion

Debtors submit the appointment of Geer Law Firm on the terms and conditions set forth herein is in the best interests of Debtors, the bankruptcy estate, Debtors' creditors, and all other parties-in-interest. Therefore, Debtors respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit 1**: (i) authorizing Debtors' employment and retention of

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

Geer Law Firm as its counsel, nunc pro tunc, according to the terms and conditions as set forth in this Application and the Engagement Agreements; and (ii) granting such other and further relief as the Court deems just and proper.

Dated this 29th day of August, 2019.

Respectfully submitted by:

**WIGGAM & GEER, LLC.**
By:   /s/ Will B. Geer
        Will B. Geer, Esq.
        Georgia Nar No. 940493
        50 Hurt Plaza, SE, Suite 1245
        Atlanta, Georgia 30303
        wgeer@wiggamgeer.com

**ANDERSEN LAW FIRM, LTD.**
By:   /s/ Ryan A. Andersen
        Ryan A. Andersen, Esq.
        Nevada Bar No. 12321
        Ani Biesiada, Esq.
        Nevada Bar No. 14347
        101 Convention Center Drive
        Suite 600
        Las Vegas, Nevada 89109

*Proposed Counsel for Edward Steven Burdekin and National Retail Store Services, LLC*