**GARMAN TURNER GORDON LLP**
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
GABRIELLE A. HAMM
Nevada Bar No. 11588
E-mail: ghamm@gtg.legal
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Ph: (725) 777-3000 / Fax: (725) 777-3112

*Attorneys for Debtor National Merchandising Services, LLC*

**ANDERSEN LAW FIRM, LTD.**
RYAN A. ANDERSEN, ESQ.
Nevada Bar No. 12321
Email: ryan@vegaslawfirm.legal
ANI BIESIADA, ESQ.
Nevada Bar No. 14347
Email: ani@vegaslawfirm.legal
101 Convention Center Drive, Suite 600
Las Vegas, Nevada 89109
Ph: 702-522-1992 / Fax: 702-825-2824

and

**WIGGAM & GEER, LLC**
WILL B. GEER, ESQ.
Georgia State Bar No. 940493
Admitted Pro Hac Vice
50 Hurt Plaza, SE, Suite 1245
Atlanta, Georgia 30303
Ph: 404-233-9800 / Fax: 404-287-2767
Email: wgeer@wiggamgeer.com

*Attorneys for Debtors National Store Retail Services, LLC and Edward Steven Burdekin*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| In re:<br><br>NATIONAL MERCHANDISING SERVICES, LLC<br><br>☐ Affects this Debtor.<br><br>☒ Affects all Debtors.<br><br>☐ Affects Edward Steven Burdekin.<br><br>☐ Affects National Store Retail Services, LLC. | Case No.: BK-19-15172-ABL<br>Chapter 11<br><br>Jointly administered with:<br><br>Edward Steven Burdekin,<br>    Case No. BK-19-15175-ABL; and<br><br>National Store Retail Services, LLC,<br>    Case No. BK-19-15174-ABL<br><br>Hearing Date: August 24, 2020<br>Hearing Time: 9:30 a.m. |
|---|---|

## DEBTORS' BRIEF IN SUPPORT OF PLAN CONFIRMATION

Debtors and debtors-in-possession National Merchandising Services, LLC, a Nevada limited liability company ("NMS"), by and through its counsel, the law firm of Garman Turner Gordon LLP, and National Store Retail Services, LLC ("NSRS") and Edward Steven Burdekin ("Burdekin" and collectively with NMS and NSRS, "Debtors"), by and through their counsel, Wiggam & Geer, LLC and Andersen Law Firm, Ltd., hereby submit their brief ("Brief") in support of confirmation of *Debtors' Amended Joint Plan of Reorganization* [ECF No. 104], filed on June 19, 2020 (the "Plan").

This Brief is made and based on the *Declaration of Edward Steven Burdekin in Support of Plan Confirmation* (the "Burdekin Decl."), the Plan, and the other papers and pleadings filed in the dockets of the Chapter 11 Cases,[1] judicial notice of which is respectfully requested, the points and authorities set forth below, and the argument of counsel at the time of the Confirmation Hearing. If necessary, Debtors reserve the right to supplement this Brief with additional argument and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.
JURISDICTION AND VENUE**

1. The Court has core subject matter jurisdiction to determine confirmation of the Plan pursuant to 28 U.S.C. §§ 157(b)(2), including (b)(2)(A) and (L), and 1334, and Local Rule 1001(b)(1). Pursuant to Local Rule 9014.2, the Debtors consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

3. The Debtors' Chapter 11 Cases are jointly administered pursuant to Bankruptcy Rule 1015(b). See ECF Nos. 27, 27 and 28.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

4.  The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

## II.
## RELEVANT FACTS

**A.  Background.**

### 1.  National Merchandising Services, LLC

5.  NMS executes business to business services to its clients primarily through merchandising, auditing, project assembly and other in-store or in-home work, which is provided by independent contractors provided by NSRS. NMS administers these services through local, regional, district and other personnel. NMS employs ten people. Besides Mr. Burdekin, NMS employs three coordinators, one daytime manager, one nighttime manager, a secretary, and three schedulers. See Burdekin Decl. at ¶ 4.

6.  NMS is owned by National Merchandising of America, Inc., a Georgia corporation (49%) and Spar NMS Holdings, Inc., a Nevada corporation. Id. at ¶ 5.

7.  NMS has two primarily clients, Advance Auto (representing about 17% of NMS business), and Dollar General (representing about 80% of NMS business). Id. at ¶ 6.

8.  Mr. Burdekin has been the President and Chief Executive Office of NMS since about the time it began engaging in this business in 2012, and Mr. Burdekin has operated NMS since that time. Id. at ¶ 7.

### 2.  National Store Retail Services, LLC

9.  NMS contracts field work to NSRS who in turn currently provides over 100 field workers to NMS customers. Id. at ¶ 8.

10. Mr. Burdekin own 100% of NSRS. Mr. Burdekin is also the sole manager, president and CEO of NSRS, and Mr. Burdekin has operated NSRS since its inception. NMS, NSRS and Mr. Burdekin are affiliates within the meaning of Section 101(2)(B) and (D). Id. at ¶ 9.

11. The Debtors' businesses are interdependent, both financially and operationally. Mr. Burdekin is employed by and operates NMS. NMS's operations are dependent upon NSRS

providing field service workers to NMS customers. NSRS' revenue is dependent on NMS business operations. Mr. Burdekin's income is derived from operating both NMS and NSRS. Id. at ¶ 10.

### 3. Events Leading to the Filing of Chapter 11

12. Prior to September 2018, National Resets and Remodels, LLC, a Georgia limited liability company ("NRR") provided field workers to NMS customers much like NSRS does today. Mr. Burdekin believes that NRR is 100% owned by Kortni Harley. Id. at ¶ 11.

13. On or about July 26, 2018, an economic dispute arose between NMS and NRR, and NMS ceased doing business with NRR in about mid-September, 2018. Id. at ¶ 12.

14. On July 5, 2019, Mr. Burdekin discovered that since at least Memorial Day 2019, certain persons associated with NRR had stated their intention to others that they had determined to take action to shut down NMS. Debtors believe this action was primarily in retaliation for economic disputes between NRR and NMS, including the termination of the agreement between NRR and NMS. Since May 2019, workers at NSRS have been hearing from these persons, and more recently others, that NMS and NSRS were going to be shut down or run out of business and that they should quit their jobs and find new work. Id. at ¶ 13.

15. As a result, NSRS was at risk of losing numerous workers, and replacing departing workers with workers of similar quality and with similar experience would be difficult. Id. at ¶ 14.

16. As a result of not having enough workers, Dollar General cut a number of teams from performing work. When asked by customers, Debtors had to advise them that not all work requests could be performed. If NSRS had lost any additional workers, particularly in key positions, it likely would have ended the operations of NMS and NSRS. Id. at ¶ 15.

17. The rumors noted above that circulated damaged morale and leadership at both NSRS and NMS. Id. at ¶ 16.

18. Dollar General began inquiring about Debtors' business struggles and why employees were applying for work directly with Dollar General. Id. at ¶ 17.

19. Mr. Burdekin learned that a core group was working to shut down NMS and NSRS and telling others that they are planning to commence lawsuits against Debtors. Debtors did not know whether such statements were true or frivolous, but as indicated above, they had a delirious

effect on NMS and NSRS leadership, morale and workforce. The threats also affected services requested by NMS by its leading customers. Id. at ¶ 18.

20. The threats against Debtors were intertwined, and Debtors determined that any claims arising from these disputes would be best resolved in a collective process. Id. at ¶ 19.

21. As a result of the foregoing, Debtors determined to seek protection under Chapter 11 to take advantage of a general bar date for the filing of all claims against the Debtors. Id. at ¶ 20.

### 4. Commencement of Chapter 11 Cases

22. On August 10, 2019, NMS commenced a voluntary case in this Bankruptcy Court under Chapter 11 of the Bankruptcy Code, Bankruptcy Case No, BK-S-19-15172-ABL, and Burdekin and NSRS each commenced voluntary cases in this Bankruptcy Court under Chapter 11 of the Bankruptcy Code, Bankruptcy Case Nos. BK-S-19-15175-MKN and BK-S-19-15174-ABL, respectively, the following day. Id. at ¶ 21.

**B.    The Plan.**

23. The Plan provides for full payment of allowed claims on the Effective Date. See Plan, Art. III; Burdekin Decl. at ¶ 22.

24. The Plan does not contemplate substantive consolidation of the Debtors, and, except as otherwise provided in the Plan, each Estate will be treated separately and be responsible solely for the claims against such Estate. See generally, Plan; Burdekin Decl. at ¶ 23.

25. The Debtors' creditors and interest holders are divided into twelve (12) classes in the Plan. Classes 1, 2 and 3 consist of the holders of Secured Claims of NMS, NSRS and Burdekin, respectively. Classes 4, 5 and 6 consist of the holders of Priority Claims of NMS, NSRS and Burdekin, respectively. Classes 7, 8 and 9 consist of the holders of General Unsecured Claims of NMS, NSRS and Burdekin, respectively. Classes 10, 11 and 12 consist of intercompany claims of NMS, NSRS and Burdekin, respectively. Classes 13 and 14 consist of the holders of NMS and NSRS Equity Interests, respectively. See Burdekin Decl. at ¶ 24.

26. All classes of Allowed Claims are unimpaired under the Plan. See Plan, Art. IV; Burdekin Decl. at ¶ 25.

# III.
# LEGAL ANALYSIS

### A. The Burden of Proof for Plan Confirmation Is a Preponderance of the Evidence.

A bankruptcy court may confirm a chapter 11 plan if the plan proponent proves by a preponderance of the evidence either: (1) that all applicable requirements of Section 1129(a) of the Bankruptcy Code have been met; or (2) if the only condition to confirmation that is not satisfied is section 1129(a)(8), that the plan satisfies the cramdown standards under section 1129(b); that is, that the plan does not discriminate unfairly against, and is fair and equitable with regard to, each impaired class that has not accepted the plan. See Zachary v. Cal. Bank & Trust (In re Zachary), 811 F.3d 1191, 1194 (9th Cir. 2016); Liberty Nat'l Enters. v. Ambanc LaMesa Ltd. P'ship (In re Ambanc LaMesa Ltd. P'ship), 115 F.3d 650, 653 (9th Cir. 1997) (preponderance of the evidence standard).

### B. The Plan Complies with the Bankruptcy Code.

Section 1129(a)(1) of the Bankruptcy Code requires that a plan "[c]omply with the applicable provisions of [the Bankruptcy Code]." See 11 U.S.C. § 1129(a)(1). To determine plan compliance with Section 1129(a)(1), reference must be made to the requirements of Sections 1122 and 1123, which govern classification of claims and contents of plans, respectively. See In re G-I Holdings, Inc., 420 B.R. 216 (D.N.J. 2009); In re Journal Register Co., 407 B.R. 520, 531-32 (Bankr. S.D.N.Y. 2009); see also Kane v. Johns-Mansville Corp. (In re Johns-Mansville Corp.), 843 F.2d 636, 648-49 (2d Cir. 1988) ("applicable provisions" refers to provisions of Chapter 11 that concern the form and content of reorganization plans).

**1. Classification of Claims Complies With Section 1122 and 1123(a)(1).** Under Section 1122(a), "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Section 1122(a) requires only that claims must be "substantially similar" to be placed into the same class; thus, Section 1122(a) prohibits placing dissimilar claims together in the same class, but it does not prevent substantially similar claims from being placed into different classes. See Zante, Inc. v. Delgado (In re Zante, Inc.), 467 B.R. 216, 218 (D. Nev. 2012); see also Wells Fargo Bank, N.A.

v. Loop 76, LLC (In re Loop 76, LLC), 465 B.R. 525, 536-37 (B.A.P. 9th Cir. 2012), aff'd, 578 F. App'x 644 (9th Cir. 2014). To determine whether claims are substantially similar, "bankruptcy court judges must evaluate the nature of each claim, *i.e.*, the kind, species, or character of each category of claims." See In re Rexford Props., LLC, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016) (quoting Steelcase, Inc. v. Johnston (In re Johnston), 21 F.3d 323, 327 (9th Cir. 1994)).

With the exception of Priority Tax Claims and Administrative Claims, including Professional Fee Claims, which need not be classified, the Plan designates 14 classes of Claims and Equity Securities in the Debtors. The classification scheme conforms to the requirements of the Bankruptcy Code and separately classifies Claims and Equity Securities based on valid business, factual, and legal reasons, such as the relative priority of claims under Section 507(a) of the Bankruptcy Code and the nature of the claims. Accordingly, the Plan's classification scheme does not place any dissimilar claims within the same class and complies with Section 1122 of the Bankruptcy Code.

Further, Article III of the Plan designates twelve (12) classes of claims and two (2) classes of equity interests. Accordingly, the Plan satisfies Section 1123(a)(1) of the Bankruptcy Code.

**2.** **Unimpaired Classes Specified Under Section 1123(a)(2).** Article III of the Plan specifies that all Classes of Claims are unimpaired under the Plan. Accordingly, the Plan satisfies Section 1123(a)(2) of the Bankruptcy Code.

**3.** **Specified Treatment of Impaired Classes Under Section 1123(a)(3).** Because the Plan specifies that all Classes of Claims are unimpaired under the Plan, Section 1123(a)(3) of the Bankruptcy Code is not applicable, and therefore, the Plan complies with Section 1123(a)(3) of the Bankruptcy Code.

**4.** **No Discriminatory Treatment Under Section 1123(a)(4).** As reflected in the treatment of the Classes in Article IV of the Plan, the Plan provides the same treatment by the Debtors for each Claim or Equity Security in each respective Class unless the holder has agreed to less favorable treatment. Therefore, the Plan complies with the requirements of 11 U.S.C. § 1123(a)(4).

Garman Turner Gordon
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

4813-6238-4839, v. 4

7

**5.    Adequate Means of Implementation of the Plan Under Section 1123(a)(5).** The Plan complies with the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan provides adequate and proper means for the implementation of the Plan, including, without limitation, the appointment of a Disbursing Agent, the vesting of Assets in the Reorganized Debtors, the funding of Effective Date distributions, the post-Effective Date management of NMS and NSRS, and the effectuating of the transactions contemplated by the Plan, see Plan, Art. V, along with procedures for resolving Claims, see Plan, Art. XII, and making distributions to Holders of Allowed Claims, thereby satisfying 11 U.S.C. § 1123(a)(5).  See Plan, Art. V (Means of Implementation); §§ 12.1 (Filing of Objections to Claims), 12.7 (Providing for Claims Payments); Art. VII (Manner of Distribution of Property Under this Plan).

**6.    Prohibition on Issuance of Non-Voting Securities Under Section 1123(a)(6).** The Plan provides for the full payment of all Allowed Claims, and Equity Interests are unimpaired. The Debtors will not issue any securities and therefore, 11 U.S.C. § 1123(a)(6) is not applicable.

**7.    Designation of Officers, Directors or Trustee Under Section 1123(a)(7).** Section 5.5 of the Plan provides that upon the Effective Date, NMS and NSRS will continue to be managed by Burdekin, which management may subsequently be modified to the extent provided by Reorganized Debtors' articles of incorporation or organization, by-laws, and operating agreement (as amended, supplemented, or modified).  Accordingly, 11 U.S.C. § 1123(a)(7) is satisfied.

**C.    11 U.S.C. § 1129(a)(2): Proponent Compliance with the Bankruptcy Code.**

Section 1129(a)(2) requires a plan proponent to comply with the applicable provisions of the Bankruptcy Code, which encompasses the disclosure and solicitation requirements under Section 1125 of the Bankruptcy Code.  See In re Art & Architecture Books of the 21st Century, No. 2:13-bk-14135-RK, 2016 WL 1118743, *7-*12 (Bankr. C.D. Cal. Mar. 18, 2016); In re Trans World Airlines, Inc., 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995).  Because the Debtors are paying all Allowed Claims in full and are not altering any Equity Securities, all classes are deemed to vote in favor of the Plan. Accordingly, no solicitation is required and the Plan satisfies Section 1129(a)(2).

**D.**     **11 U.S.C. § 1129(a)(3): Good Faith and Not by Means Forbidden by Law.**

Section 1129(a)(3) does not define "good faith," and good faith should be determined based on the "totality of the circumstances" and on a "case-by-case basis, taking into account the particular features of each . . . plan." See Platinum Cap., Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1074, 1075 (9th Cir. 2002) (citations omitted). As a general rule, a Chapter 11 plan is proposed in good faith if it achieves "a result consistent with the objectives and purposes" of the Bankruptcy Code and exhibits "fundamental fairness" in dealing with creditors. See Marshall v. Marshall (In re Marshall), 721 F.3d 1032, 1046 (9th Cir. 2013); Jorgensen v. Fed. Land Bank of Spokane (In re Jorgensen), 66 B.R. 104, 108-09 (B.A.P. 9th Cir. 1986). The totality of the circumstances should be considered in determining good faith. See In re Stolrow's Inc., 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988).

The Plan pays all Allowed Claims in full on the Effective Date of the Plan, or as otherwise agreed with a particular creditor, with cash generated from the Debtors' operations. Accordingly, the Plan as filed achieves results consistent with the objectives and purposes of the Bankruptcy Code, including, among other things, "to satisfy creditors' claims," United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983). Therefore, the Plan satisfies 11 U.S.C. § 1129(a)(3).

**E.**     **11 U.S.C. § 1129(a)(4): Payments for Services.**

Consistent with Section 1129(a)(4), the Plan provides that all pre-Effective Date fees and expenses of professionals retained by the Estates, as well as all other accrued fees and expenses of professionals through the Effective Date, remain subject to final review by the Court pursuant to Section 330. See Plan § 2.4. The provision in the Plan for the Court's review and ultimate determination of the fees and expenses satisfies the objectives of Section 1129(a)(4). See In re Elsinore Shore Assocs., 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that the requirements of Section 1129(a)(4) were satisfied where the plan provided for payment of only "allowed" administrative expenses). Therefore, the Plan satisfies 11 U.S.C. § 1124(a)(4).

**F.**     **11 U.S.C. § 1129(a)(5): Disclosure of Directors and Officers.**

Section 1129(a)(5) requires the proponent of the plan to disclose the identity of those individuals who will serve as management of the reorganized debtor and why such continuance of

such management is in the best interests of creditors, holders and equity interest and public policy. See 11 U.S.C. § 1129(a)(5). As indicated above, Section 5.5 of the Plan provides that upon the Effective Date, NMS and NSRS will continue to be managed by Burdekin, which management may subsequently be modified to the extent provided by Reorganized Debtors' articles of incorporation or organization, by-laws, and operating agreement (as amended, supplemented, or modified). Mr. Burdekin's continued management and operation of the Debtors is in the best interests of creditors, holders and equity interest and public policy, as is demonstrated by his post-petition operations of the Debtors and the full pay Plan presented to the Court. Moreover, Mr. Burdekin's continued management of NMS and NSRS is permissible under Nevada and Georgia law, respectively. Accordingly, 11 U.S.C. § 1123(a)(5) is satisfied.

G.     **11 U.S.C. § 1129(a)(7): Best Interests Test.**

Section 1129(a)(7) requires that a plan be in the best interests of creditors and interest holders, and specifically, that each holder of an impaired claim has either accepted the plan, or "will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7)(A)(i) and (ii). In order to satisfy subsection (a)(7), the Court must find that each dissenting creditor will receive or retain value, as of the effective date of the plan, that is not less than the amount it would receive if the debtor were liquidated. See Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992).

In this case, there are no impaired Classes of Creditors, all Creditors are deemed to have voted in favor of the Plan, and all Allowed Claims will be paid in full on the Effective Date. Therefore, the Plan satisfies Section 1129(a)(7).

H.     **11 U.S.C. § 1129(a)(8): Acceptance or Rejection by Certain Classes.**

Section 1129(a)(8) requires that each class of claims and interests either has accepted a plan or is not impaired under a plan. See 11 U.S.C. § 1129(a)(8). Whether a class of claims is impaired is governed by Section 1124, and whether a class of claims has accepted a plan is determined by reference to Section 1126. See 11 U.S.C. §§ 1124 and 1126. Here, no holders of

Claims or Equity Securities are impaired under the Plan, and all classes are deemed to have accepted the Plan under Section 1126.  Therefore, 11 U.S.C. § 1129(a)(8) has been satisfied.

**I.      11 U.S.C. § 1129(a)(9): Priority Claims.**

In accordance with Sections 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code, §§ 2.2 and 2.3 of the Plan provide for the full payment of Allowed Administrative Claims, including Professional Fees, and Allowed Priority Tax Claims, and §§ 4.3, 4.4 and 4.5 of the Plan provide for payment of all Allowed Priority Unsecured Claims.  As such, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9).

**J.      11 U.S.C. § 1129(a)(10): One Consenting Impaired Class.**

Section 1129(a)(10) requires that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider."  11 U.S.C. § 1129(a)(10).  Here, there is no class of claims that is impaired under the Plan and, therefore, Section 1129(a)(10) does not apply.

**K.      11 U.S.C. § 1129(a)(11): Feasibility.**

Section 1129(a)(11) requires that a proposed plan be feasible.  Specifically, Debtors must establish that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  Here, the Debtor has cash on hand to pay all Allowed Claims on the Effective Date of the Plan.  Therefore, the Plan is feasible and Section 1129(a)(11) has been satisfied.

**L.      11 U.S.C. § 1129(a)(12): U.S. Trustee's Fees Paid.**

Section 1129(a)(12) requires that all fees payable under 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, be paid or provided for in the Plan.  Under § 12.13 of the Plan, the Debtors, prior to the Effective Date, and the Reorganized Debtors, after the Effective Date shall be responsible for payment of all fees payable to the Office of the U.S. Trustee pursuant to the sliding scale set forth in 28 U.S.C. § 1930(a)(6), and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  The Debtors have the cash necessary to pay and will pay U.S. Trustee Fees.  Accordingly, Section 1129(a)(12) has been satisfied.

**M.      11 U.S.C. §§ 1129(a)(6) and (a)(13) – (a)(16): Miscellaneous Inapplicable Provisions.**

Subsections (a)(6) (regulatory approval of rates), (a)(13) (retiree benefits), (a)(14) (domestic support obligations), (a)(15) (applicable to individuals if the holder of an allowed unsecured claim objects to the plan), and (a)(16) (charitable organizations) are inapplicable to the Debtors.

**N.      If Necessary, Non-Material Plan Modifications Are Permitted.**

Section 1127(a) allows for plan modifications, and Bankruptcy Rule 3019(a) establishes the procedural requirements for plan modifications pre-confirmation.  See 11 U.S.C. § 1127(a); Fed. R. Bankr. P. 3019(a).  Plan modifications do not require a new disclosure statement and court approval unless the modifications are material.  See In re Simplot, No. 06-00002, 2007 WL 2479664, at *11 (Bankr. D. Idaho Aug. 28, 2007) (citing In re Downtown Inv. Club III, 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988).  The word "material" in this context has been described as "so affect[ing] a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." See id. (quoting In re Am. Solar King Corp., 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988)).  To the extent any plan modifications are needed, they will not be material.

## IV.
## CONCLUSION

Based upon the foregoing, the Debtors respectfully requests that the Court confirm the Plan and grant such other and further relief as is just and proper.

DATED this 10th day of August, 2020.

> GARMAN TURNER GORDON LLP
>
> By: _/s/ William M. Noall_
> WILLIAM M. NOALL
> GABRIELLE A. HAMM
> 650 White Drive, Suite 100
> Las Vegas, Nevada 89119
>
> Attorneys for Debtor National Merchandising Services, LLC

By: /s/ Will B. Geer
ANDERSEN LAW FIRM, LTD.
RYAN A. ANDERSEN
ANI BIESIADA
101 Convention Center Drive, Suite 600
Las Vegas, Nevada 89109

and

WIGGAM & GEER, LLC
WILL B. GEER
Admitted Pro Hac Vice
50 Hurt Plaza, SE, Suite 1245
Atlanta, Georgia 30303

Attorneys for Debtors National Store Retail Services, LLC and Edward Steven Burdekin