**GARMAN TURNER GORDON LLP**
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
GABRIELLE A. HAMM
Nevada Bar No. 11588
E-mail: ghamm@gtg.legal
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Ph: (725) 777-3000 / Fax: (725) 777-3112

*Attorneys for Debtor National Merchandising Services, LLC*

**ANDERSEN LAW FIRM, LTD.**
RYAN A. ANDERSEN, ESQ.
Nevada Bar No. 12321
Email: ryan@vegaslawfirm.legal
ANI BIESIADA, ESQ.
Nevada Bar No. 14347
Email: ani@vegaslawfirm.legal
101 Convention Center Drive, Suite 600
Las Vegas, Nevada 89109
Ph: 702-522-1992 / Fax: 702-825-2824

and

**WIGGAM & GEER, LLC**
WILL B. GEER, ESQ.
Georgia State Bar No. 940493
Admitted Pro Hac Vice
50 Hurt Plaza, SE, Suite 1245
Atlanta, Georgia 30303
Ph: 404-233-9800 / Fax: 404-287-2767
Email: wgeer@wiggamgeer.com

*Attorneys for Debtors National Store Retail Services, LLC and Edward Steven Burdekin*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| In re:<br><br>NATIONAL MERCHANDISING SERVICES, LLC<br><br>☐ Affects this Debtor.<br><br>☒ Affects all Debtors.<br><br>☐ Affects Edward Steven Burdekin.<br><br>☐ Affects National Store Retail Services, LLC. | Case No.: BK-19-15172-ABL<br>Chapter 11<br><br>Jointly administered with:<br><br>Edward Steven Burdekin, Case No. BK-19-15175-ABL; and<br><br>National Store Retail Services, LLC, Case No. BK-19-15174-ABL<br><br><br>Hearing Date: August 24, 2020<br>Hearing Time: 9:30 a.m. |
|---|---|

**DECLARATION OF EDWARD BURDEKIN
<u>IN SUPPORT OF PLAN CONFIRMATION</u>**

I, Edward Steven Burdekin, make this Declaration pursuant to 28 U.S.C. § 1746 and state as follows:

1. I am more than 21 years old, and I have never been convicted of a felony or of any crime involving moral turpitude.

2. I make this declaration in support of confirmation of *Debtors' Amended Joint Plan of Reorganization* [ECF No. 104] (the "Plan").[1]

3. I am the President and Chief Executive Officer of both NMS and NSRS. In that capacity, I have personal knowledge of the business and financial affairs of both NMS and NSRS. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the NMS's and NSRS' operations and finances, information learned from my review of relevant documents, and information supplied to me by NMS's and NSRS and employees and advisors. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

4. NMS executes business to business services to its clients primarily through merchandising, auditing, project assembly and other in-store or in-home work, which is provided by independent contractors provided by NSRS. NMS administers these services through local, regional, district and other personnel. NMS employs ten people. Besides me, NMS employs three coordinators, one daytime manager, one nighttime manager, a secretary, and three schedulers.

5. NMS is owned by National Merchandising of America, Inc., a Georgia corporation (49%) and Spar NMS Holdings, Inc., a Nevada corporation.

6. NMS has two primarily clients, Advance Auto (representing about 17% of NMS business), and Dollar General (representing about 80% of NMS business).

7. I have been the President and Chief Executive Office of NMS since about the time it began engaging in this business in 2012, and I have operated NMS since that time.

8. NMS contracts field work to NSRS who in turn currently provides over 100 field workers to NMS customers.

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Plan.

Garman Turner Gordon
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

9. I own 100% of NSRS. I am also the sole manager, president and CEO of NSRS, and I have operated NSRS since its inception. NMS, NSRS and I are affiliates within the meaning of Section 101(2)(B) and (D).

10. The Debtors' businesses are interdependent, both financially and operationally. I am employed by and operate NMS. NMS's operations are dependent upon NSRS providing field service workers to NMS customers. NSRS' revenue is dependent on NMS business operations. My income is derived from operating both NMS and NSRS.

11. Prior to September 2018, National Resets and Remodels, LLC, a Georgia limited liability company ("NRR") provided field workers to NMS customers much like NSRS does today. I believe that NRR is 100% owned by Kortni Harley.

12. On or about July 26, 2018, an economic dispute arose between NMS and NRR, and NMS ceased doing business with NRR in about mid-September, 2018.

13. On July 5, 2019, I discovered that since at least Memorial Day 2019, certain persons associated with NRR had stated their intention to others that they had determined to take action to shut down NMS. I believe this action was primarily in retaliation for economic disputes between NRR and NMS, including the termination of the agreement between NRR and NMS. Since May 2019, workers at NSRS have been hearing from these persons, and more recently others, that NMS and NSRS were going to be shut down or run out of business and that they should quit their jobs and find new work.

14. As a result, NSRS was at risk of losing numerous workers, and replacing departing workers with workers of similar quality and with similar experience would be difficult.

15. As a result of not having enough workers, Dollar General cut a number of teams from performing work. When asked by customers, I had to advise them that not all work requests could be performed. If NSRS had lost any additional workers, particularly in key positions, it likely would have ended the operations of NMS and NSRS.

16. The circulating rumors noted above damaged morale and leadership at both NSRS and NMS.

17. Dollar General began inquiring about Debtors' business struggles and why

employees were applying for work directly with Dollar General.

18. I learned that a core group was working to shut down NMS and NSRS and telling others that they are planning to commence lawsuits against Debtors. Debtors did not know whether such statements were true or frivolous, but, as indicated above, they had a delirious effect on NMS and NSRS leadership, morale and workforce. The threats also affected services requested of NMS by its leading customers.

19. The threats against Debtors were intertwined, and Debtors determined that any claims arising from these disputes would be best resolved in a collective process.

20. As a result of the foregoing, Debtors determined to seek protection under Chapter 11 to take advantage of a general bar date for the filing of all claims against the Debtors.

21. On August 10, 2019, NMS commenced a voluntary case in this Bankruptcy Court under Chapter 11 of the Bankruptcy Code, Bankruptcy Case No, BK-S-19-15172-ABL, and NSRS and I each commenced voluntary cases in this Bankruptcy Court under Chapter 11 of the Bankruptcy Code, Bankruptcy Case Nos. BK-S-19-15174-MKN and BK-S-19-15175-ABL, respectively, the following day.

22. I have read the Plan. The Plan provides for full payment of Allowed Claims on the Effective Date.

23. The Plan does not contemplate substantive consolidation of the Debtors, and, except as otherwise provided in the Plan, each Estate will be treated separately and be responsible solely for the claims against such Estate.

24. The Debtors' creditors and interest holders are divided into twelve (12) classes in the Plan. Classes 1, 2 and 3 consist of the holders of Secured Claims of NMS, NSRS and me, respectively. Classes 4, 5 and 6 consist of the holders of Priority Claims of NMS, NSRS and me, respectively. Classes 7, 8 and 9 consist of the holders of General Unsecured Claims of NMS, NSRS and me, respectively. Classes 10, 11 and 12 consist of intercompany claims of NMS, NSRS and me, respectively. Classes 13 and 14 consist of the holders of NMS and NSRS Equity Interests, respectively.

25. I have approved only similarly situated claims in the same class under the Plan. I

Garman Turner Gordon
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

believe that all classes of Allowed Claims are unimpaired under the Plan.

26. Debtors have sufficient cash on hand to pay all Allowed Claims in cash on the Effective Date.

27. There are no modifications intended to be made to the charters of NMS and NSRS.

28. I will continue to manage and operate NMS and NSRS, and my management is in the best interests of creditors, holders and equity interest and public policy as is demonstrated by my post-petition operations of the Debtors and the full pay Plan presented to the Court.

29. Debtors are not subject to any rate regulations.

30. The Plan provides that all fees payable under 28 U.S.C. § 1930 prior to the Effective Date will be paid by Debtors, and after the Effective Date, the Reorganized Debtors shall pay all quarterly fees payable to the Office of the United States Trustee pursuant to the sliding scale set forth in 28 U.S.C. § 1930(a)(6).

31. None of the Debtors are required by a judicial or administrative order or by statute to pay domestic support obligations

32. No holder of an Allowed Unsecured Claim has objected to confirmation of the Plan, and the Plan provides for the full payment of all Allowed Unsecured Claims.

33. Debtors have no retirement benefits as that term is defined in Section 1114 of the Bankruptcy Code. As such, the Plan does not provide for the continuation after the Effective Date of payment of any retiree benefits.

34. Neither NMS nor NSRS is a non-profit corporation.

I declare under penalty of perjury of the laws of the United States of America that the foregoing statements are true to the best of my knowledge and belief.

DATED this 10th day of August, 2020.

                                         */s/ Edward Burdekin*
                                         EDWARD BURDEKIN

4827-3375-7895, v. 4

Garman Turner Gordon
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
(725) 777-3000